Filed 6/24/25  P. v. Sawboh CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>AMBER DAWN MCDAVITT SAWBOH,<br><br>     Defendant and Appellant. | A170958<br><br>(Humboldt County<br> Super. Ct. No. CR2400733) |

After pleading guilty to burglary, defendant Amber Dawn McDavitt Sawboh appeals on the ground the trial court improperly denied her request for pretrial mental health diversion under Penal Code[1] section 1001.36.  We conclude the trial court abused its discretion in determining that Sawboh was ineligible for diversion.  Accordingly, we conditionally reverse the judgment and remand to the trial court.

## I.  BACKGROUND

In March 2024, Sawboh forcefully entered Raquel Munoz's apartment when Munoz was not home.  Before the break-in, Munoz's neighbor saw Sawboh behind a locked gate and questioned why Sawboh was there, and Sawboh replied that she was staying with Munoz.  Suspicious, the neighbor

_____

[1] Undesignated statutory references are to the Penal Code.

1

contacted Munoz who informed her that no one had permission to be in her apartment. Munoz returned and discovered that her front door had been broken open and was blocked with furniture. When police arrived, Sawboh did not comply with their verbal commands to exit the apartment. Officers entered the apartment and found Sawboh on the second floor, hiding in a child's bedroom. Sawboh had emptied out drawers, closets, and cupboards, leaving the apartment in disarray. She had also urinated on the bathroom floor, and she was wearing Munoz's clothing. Officers detained her without incident. Sawboh told the officers she was seeking refuge from stormy weather and wanted to take a shower and get fresh clothes.[2]

Sawboh was charged by felony information with first degree residential burglary (§§ 459, 460, subd. (a)). In May 2024, Sawboh filed a motion for mental health diversion pursuant to section 1001.36. To support her motion, Sawboh submitted a psychological evaluation report prepared by psychologist Kevin Kelly, Ph.D.[3] Dr. Kelly examined Sawboh during a 30-minute videoconference. He also reviewed the police report and Sawboh's criminal history, which included a pattern of trespass and theft. No mental health

---

[2] We, like the parties, rely on the presentencing probation report for the facts concerning Sawboh's offense. See footnote 3, *post*.

[3] Sawboh's motion for mental health diversion, including Dr. Kelly's report, was transmitted to this court as a confidential record. We interpret Sawboh's reliance on Dr. Kelly's report in her brief, which she filed without redactions or a sealing request, as a waiver of the confidentiality of the report. (See Cal. Rules of Court, rule 8.47(c)(1) [publicly-filed documents may not "disclose material contained in a confidential record, including a record that, by law, a party may choose be kept confidential in reviewing court proceedings *and that the party has chosen to keep confidential*," italics added]; see also *id*., rule 8.47(c)(2) [to maintain confidentiality, a party may file a motion to file a document under seal].) To support her motion, Sawboh also submitted letters from her parents and brother explaining Sawboh's history with substance abuse addiction and mental health treatment.

records were available.  Dr. Kelly was unable to establish rapport with Sawboh.  He observed that she presented with a "bitter mood and she scoffed at the idea of diagnosis."  When he explained to her the criteria for mental health diversion, Sawboh agreed to continue the examination.  She admitted she suffered from anxiety, alcoholism, and drug use.  While the police report did not mention alcohol intoxication, Sawboh stated she " 'had some wine that day' " but did not know how much she drank.  She stated, " 'I was mentally confused because I thought that there was no place for me to live. . . . If I was clear headed and sober and had counseling I probably wouldn't have done it.' "

Dr. Kelly reported that Sawboh acknowledged an alcohol problem and seemed depressed.  Narcissistic personality traits were evident.  She spoke "bitterly as if it was 'her' against 'them.' "  She had used treatment services in the past and, presently, had a sensible treatment plan in mind—rehab, counseling, and housing.

Dr. Kelly was unable to administer any psychological testing.  While he began testing, he abandoned the effort because it appeared Sawboh could not tolerate the duration and nature of the testing.  Based on Sawboh's history and her presentation during the examination, Dr. Kelly diagnosed her with substance use disorder (alcohol and other drugs), dysthymia,[4] and narcissistic personality disorder.  He opined that each diagnosis was "a significant factor, but not a direct factor in her behavior" on the date of the offense.  Dr. Kelly noted that while the police report did not include information about alcohol or drug use, the report that Sawboh threw clothing and stuffed animals around

---

[4] Dysthymia is a chronic state of depression not rising to major depression, but to a level that is disabling.  Hereafter, we refer to it as depression.

the apartment suggested the possibility of intoxication and of a mental health disturbance. Dr. Kelly stated that Sawboh's behavior "appeared to be deceptive, willful, and criminal, but there was also some evidence from examination and from the police report that mental health issues were a significant factor." Dr. Kelly opined that Sawboh "would persist in criminal behavior of trespass and theft unless substance abuse and depression were treated."

As to substance use disorder, Dr. Kelly reported that Sawboh appeared to have a chronic problem. Disorder was evident based on both her history of substance use causing arrests and on the need for rehab. As to depression, Dr. Kelly reported that in Sawboh, "it results in a profound sense of discouragement, futility, and unhappiness that impedes recovery of better mental status and impedes success of rehab."

The trial court conducted a hearing on Sawboh's motion, at which Dr. Kelly testified. The People opposed the motion but did not submit additional evidence or present any witnesses. Dr. Kelly opined that Sawboh needed a dual diagnosis approach involving both residential substance abuse treatment as well as counseling and possibly medication for depression.

On cross-examination, Dr. Kelly confirmed he had not reviewed Sawboh's medical records and was unable to conduct mental health testing. He confirmed that Sawboh was initially difficult but when he explained the legislative criteria for mental health diversion she was able to give a more succinct account of her mental health, her alcohol problem, and her treatment needs. He diagnosed her with substance use disorder for alcohol and other drugs, but he could not indicate which other drugs she used. He also diagnosed her with depression—but could not indicate whether she had

4

severe depression—and narcissistic personality disorder.[5]  The police report did not mention use of alcohol or drugs, and Dr. Kelly explained that typically the police would include that information in the report if they had observed it.

Regarding the statement in his report that substance use disorder was a significant factor in the burglary, Dr. Kelly testified that Sawboh stated she may have had wine on the day of the offense, but he confirmed that she did not state she was intoxicated or on drugs.  He stated Sawboh's behavior reflected a criminal breaking in, and her history showed prior trespassing and break-ins.  Dr. Kelly testified that, "foremost," this appeared to be a "pattern of antisocial behavior, criminal behavior."  Based on Sawboh's statements and criminal record, and his clinical intuition, Dr. Kelly also "would say that that behavior did not happen in the absence of a problem around substance abuse or this alcohol or methamphetamine."  Though this was "[c]onjecture on [his] part because she's not admitting to it."  But additionally, it appeared to Dr. Kelly that some sort of mental health disorder was involved in Sawboh's behavior.  When she lied to the neighbor to cover up her actions, threw stuffed animals around the room, barricaded herself inside the apartment, and wore someone else's clothing, it did not "seem like somebody that's just going to dash in and get something and run and fence it and sell it."  Rather, this behavior was associated with alcohol or substance use.  Dr. Kelly stated, "I'm not saying that the only reason she broke in or did those behaviors was because of alcohol or depression.  Just that those were the most obvious mental health factors that I could see were underlying her mental health status at the time of that charged offense."

_____

[5] Dr. Kelly confirmed narcissistic personality disorder does not qualify for mental health diversion.

5

Given the circumstances, Dr. Kelly acknowledged there was "a very weak tie" of the extent to which the substance use disorder was directly involved in the offense. Sawboh had an alcohol problem and a problem with depression. He "saw it as a significant factor. But that's arguable whether it rises to the level of significance or not. She was not in a psychotic state. She was not in a blackout state. She knew what she was doing." Dr. Kelly opined, the "substantial reason for what she did . . . was deliberate and if you are asking me as a clinician based on the information I had available is there an[y] evidence of a diagnosable condition I'm saying yes. And it's arguable for a judge to decide whether that is a significant factor."

When asked whether he was "not indicating" that Sawboh's substance use disorder "was a significant factor," Dr. Kelly replied, "No." He used the word "significant" in his report but at times he struggled with what standard to apply to use it. He used "significant" so it would not be overlooked "that she does have a problem, a significant problem, with alcohol and drugs that leads to the disorder behavior and that she does have a problem with depression. That leaves her dispirited, angry, hopeless . . . . [He] use[d] the word significant because [he was] of the opinion that if she were to get treatment for the alcohol and for the depression that she would not be motivated to behave criminally in the future."

Regarding the depression diagnosis, Dr. Kelly testified Sawboh's depression did not cause a psychosis such that she did not know what she was doing. "You can have depression and know what you are doing, but the depression can be a motivating factor because people feel hopeless," angry at the world, jealous, and not helped.

Defense counsel argued that Dr. Kelly provided evidence that Sawboh's substance use disorder and depression were significant factors in the

6

commission of the charged offense, there was no contrary expert opinion, and cross-examination did not reveal to the clear and convincing evidence standard that Dr. Kelly's opinion lacked merit. The prosecutor argued that there was no evidence of a substantial link between Sawboh's diagnoses and her criminal behavior, "besides Dr. Kelly saying yes, it was."

Ruling from the bench, the trial court denied Sawboh's motion for mental health diversion. The court explained it was "unable to find that Ms. Sawboh's mental disorder has or was a significant factor in the alleged commission of the residential burglary," as "required by . . . [s]ection 1001.36, subdivision (b)(2)." The following week, Sawboh pleaded guilty to an amended count of second degree burglary (§§ 459, 460, subd. (b)). The trial court suspended imposition of sentence and placed Sawboh on two years formal probation.

## II. DISCUSSION

Sawboh argues the trial court erred in determining she was ineligible for mental health diversion under section 1001.36, subdivision (b)(2).

### A. *Mental Health Diversion Statute*

Since 2018, section 1001.36 has given trial courts discretion to grant pretrial diversion to defendants suffering from qualifying mental disorders. (*Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882, 890 (*Sarmiento*).) The former version of the statute listed six criteria a defendant had to meet. (*Id*. at p. 891; see former § 1001.36, subd. (b)(1)(A)–(F), as amended by Stats. 2019, ch. 497, § 203.) The first two criteria required the court to be " 'satisfied' " that (1) the defendant suffered from a recognized mental disorder, and (2) the disorder was a " 'significant factor in the commission of the charged offense.' " (*Sarmiento*, at p. 891.)

7

Effective January 1, 2023, the Legislature amended section 1001.36. (Stats. 2022, ch. 735, § 1.) The amendments "confirmed the Legislature's desire to expand mental health treatment through diversion." (*Sarmiento*, *supra*, 98 Cal.App.5th at p. 891.) Now, mental health diversion requires the trial court to find the defendant both *eligible* for diversion and *suitable* for the program. (*Ibid.*) The Legislature recharacterized the first two criteria under the former statute as " 'eligibility' " criteria. (*Ibid.*) "More substantively, a defendant's eligibility no longer turned on findings to the court's 'satisfaction.' Rather, defendants are generally eligible if they 'ha[ve] been diagnosed' with a recognized mental disorder" (*ibid.*) identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders. (§ 1001.36, subd. (b)(1).) The defendant must provide evidence of the mental disorder, which "shall include a diagnosis or treatment for a diagnosed mental disorder within the last five years by a qualified mental health expert." (*Ibid.*)

With respect to the second eligibility criterion, "the amended statute creates a presumption that the defendant's diagnosed mental disorder was a significant factor in the commission of the charged crime." (*Sarmiento*, *supra*, 98 Cal.App.5th at p. 891.) That is, the court "shall find" that the diagnosed mental disorder was a significant factor "unless there is clear and convincing evidence that it was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense." (§ 1001.36, subd. (b)(2).)

The amended statute recharacterized the remaining four criteria as suitability factors that the court must consider for any defendant who satisfies the eligibility requirements. (§ 1001.36, subd. (c); *Sarmiento*, *supra*, 98 Cal.App.5th at p. 891.) A defendant is suitable for pretrial diversion if (1) a qualified mental health expert opines that the symptoms of the

defendant's mental disorder will respond to treatment, (2) the defendant consents to diversion and waives the right to a speedy trial, (3) the defendant agrees to comply with treatment, and (4) the defendant will not pose an unreasonable risk of danger to public safety if treated in the community. (§ 1001.36, subd. (c)(1)–(4).)

Even if the defendant makes a prima facie showing that she satisfies the eligibility and suitability requirements, the court still retains discretion to deny diversion. (*Sarmiento*, *supra*, 98 Cal.App.5th at p. 892.) "But this 'residual' discretion must be exercised ' "consistent with the principles and purpose of the governing law." ' [Citations.] That purpose includes a strong legislative preference for treatment of mental health disorders because of the benefits of such treatment to both the offending individual and the community." (*Id.* at pp. 892–893.)

We review the trial court's ruling on a motion for mental health diversion for abuse of discretion. (*People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1147.) " 'A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence.' " (*Ibid.*) When determining whether factual findings are supported by substantial evidence, we must account for the clear and convincing evidence standard of proof required to rebut the presumption set forth in section 1001.36, subdivision (b)(2). (See *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995–996; see *id.* at p. 1011 ["the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true"].)

*B. Analysis*

The trial court determined Sawboh was ineligible for diversion under section 1001.36, subdivision (b)(2) because there was no evidence that her mental disorder was a significant factor in the alleged commission of the burglary.  Based on this determination, the court implicitly found that Sawboh had met the first eligibility criterion—she was diagnosed with a recognized mental disorder, here, substance use disorder and depression. (§ 1001.36, subd. (b)(1).)  The People do not challenge Dr. Kelly's diagnoses. Therefore, the presumption that Sawboh's mental disorder, or disorders, was a significant factor in the commission of the offense applies "unless there is clear and convincing evidence that it was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense."  (§ 1001.36, subd. (b)(2).)  The People contend the presumption was rebutted.  We disagree.

The People argue Dr. Kelly's report and testimony were equivocal.  In his report, Dr. Kelly opined that Sawboh's substance use issues and depression symptoms were a significant factor, but not a direct factor, in her behavior on the date of the offense.  At the hearing, Dr. Kelly acknowledged that the police report did not mention alcohol or substances and Sawboh did not state she was intoxicated or on drugs.  He conceded there was "a very weak tie" between her substance use disorder and the circumstances of the offense.  While he testified that Sawboh's behavior was "foremost" a pattern of antisocial, criminal behavior, he also testified that such behavior did not happen without a substance abuse problem, although he admitted this was "[c]onjecture."  But, in considering the circumstances of the burglary, Dr. Kelly opined that another factor was "some sort of mental health disorder."  He testified that while alcohol or depression was not "the only

10

reason she broke in," they were factors underlying her mental health status at the time. Ultimately, Dr. Kelly saw Sawboh's mental disorder "as a significant factor," but stated that whether it rose to a significant level was "arguable." Finally, Dr. Kelly explained that Sawboh had a significant problem with alcohol and drugs, and her depression left her angry and hopeless, and he opined that if she received treatment for substance use and depression then "she would not be motivated to behave criminally in the future."

To the extent the opinions Dr. Kelly provided in his report and testimony were equivocal, or even conflicting, he did not opine that Sawboh's mental disorders were "not" a factor in her commission of the offense. (See § 1001.36, subd. (b)(2).) The People argue Dr. Kelly "could not state with certainty that [Sawboh's] mental health disorder (or disorders) was a significant factor in the commission of the crime." But that is not the applicable standard. Even if the trial court could have properly construed the evidence as demonstrating that Dr. Kelly did not opine that Sawboh's mental disorder was a significant factor in the commission of the offense, Dr. Kelly also did not opine that it was *not* a motivating, causal, or contributing factor. (See § 1001.36, subd. (b)(2).) Dr. Kelly was the only expert who provided opinions in this matter. The People did not submit evidence or present witnesses. Accounting for the clear and convincing evidence standard of proof (see *Conservatorship of O.B.*, *supra*, 9 Cal.5th at p. 1011), there is no substantial evidence rebutting the eligibility presumption.

The People's reliance on *People v. Oneal* (2021) 64 Cal.App.5th 581 is misplaced. There, the appellate court concluded the trial court properly denied the defendant's motion for mental health diversion because substantial evidence supported the finding that the defendant's mental

11

disorder was not a significant factor in the commission of the charged offenses. (*Id*. at p. 592.) *Oneal* was decided prior to the recent amendments which created a presumption of eligibility and, therefore, did not consider whether the presumption was rebutted. (*Id*. at pp. 587–588, 592–593.) Moreover, while the defendant's expert opined that the defendant's schizoaffective disorder played a significant role in the commission of the offenses, two other experts had submitted reports which "opined that defendant's psychotic or schizoaffective disorder was *not* responsible for, or a motivating factor in, defendant's commission of the offenses." (*Id*. at p. 592, italics added.) Here, no such evidence exists.

Instead, this case is more like *Lacour v. Superior Court* (2025) 110 Cal.App.5th 391 (*Lacour*), a recent decision which did consider whether the statutory presumption was rebutted. There, the trial court denied petitioner's motion for mental health diversion on " 'nexus grounds.' " (*Id*. at p. 398.) Even though the trial court initially recognized that petitioner's mental disorder was presumed to be a significant factor in the commission of the charged offenses,[6] it ultimately determined that the presumption had been overcome by clear and convincing evidence, finding that "*nothing in the police report indicated that petitioner was* suffering from a mental disorder at the time of the offenses." (*Id*. at pp. 404, 398.) Similarly here, the trial court stated that based on the evidence, it was "unable to find that Ms. Sawboh's mental disorder has or was a significant factor in the alleged commission of the residential burglary."

---

[6] Here, it is unclear from the record whether the trial court recognized the statutory presumption and concluded that clear and convincing evidence rebutted it. Irrespective of whether the trial court applied the correct legal standard, we conclude that no substantial evidence in the record rebuts the presumption.

In *Lacour*, our colleagues in the Third District held that the trial court abused its discretion in denying the request for mental health diversion because "the absence of evidence proving that petitioner's mental disorder *was* a factor in the commission of the offenses is not substantial evidence supporting a finding by clear and convincing evidence that petitioner's mental disorder *was not* a factor in the commission of the offenses." (*Lacour, supra*, 110 Cal.App.5th at p. 404.) The appellate court explained that the trial court had erroneously shifted the burden of proof under section 1001.36, subdivision (b)(2) to petitioner, when it was the prosecution's burden to present such clear and convincing evidence. (*Lacour*, at p. 404.) The court determined that there was no substantial evidence to support the trial court's finding that the statutory presumption had been overcome. (*Ibid*.)

Here, we conclude that the trial court's inability to find that Sawboh's mental disorder(s) *was* a significant factor in the commission of the burglary does not demonstrate substantial evidence supporting a finding by clear and convincing evidence that her mental disorder(s) *was not* a motivating, causal, or contributing factor in her commission of the offense. (See § 1001.36, subd. (b)(2); *Lacour, supra*, 110 Cal.App.5th at p. 404.) The presumption of eligibility was not rebutted by the prosecution and, therefore, the trial court abused its discretion in ruling that Sawboh was ineligible for mental health diversion. Because it found her ineligible, the court did not determine whether Sawboh was suitable for diversion and whether, if she was suitable, it should exercise its discretion to grant the motion. (See § 1001.36, subds. (a), (c); *Sarmiento, supra*, 98 Cal.App.5th at pp. 891–892.) The decision to grant or deny pretrial diversion rests in the sound discretion of the trial court. (§ 1001.36, subd. (a).) Therefore, the matter must be

remanded for the trial court to reconsider Sawboh's motion and exercise its discretion in accordance with section 1001.36.

## III.   DISPOSITION

The judgment is conditionally reversed, and the order denying Sawboh's motion for mental health diversion is reversed.  The matter is remanded to the trial court with directions to reconsider Sawboh's motion in accordance with section 1001.36.  If the court does not grant diversion, then the court shall reinstate the judgment.

LANGHORNE WILSON, J.

WE CONCUR:

HUMES, P. J.

SMILEY, J.

A170958
*People v. Sawboh*